IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BLANCA PAIZ | : | CIVIL ACTION |
| | : | |
| v. | : | No. 17-2754 |
| | : | |
| ANDREW SAUL,[1] | : | |
| *ACTING COMMISSIONER OF SOCIAL* | : | |
| *SECURITY* | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                  **June 12, 2020**

Plaintiff Blanca Paiz seeks review of the Commissioner of Social Security's denial of her

application for Disability Insurance Benefits for her alleged disability related to foot pain and heel

spurs from July 25, 2008, to December 31, 2008. United States Magistrate Judge Linda K.

Caracappa issued a Report and Recommendation (R&R) recommending Paiz's request for review

be denied. In her objections to the R&R, Paiz takes issue with Judge Caracappa's resolution of the

issues raised in her initial request for review and restates the same concerns. Upon de novo review

of Paiz's objections, the Court will overrule her objections, approve and adopt the R&R, and deny

Paiz's request for review.

## BACKGROUND

In a December 10, 2015, decision, an Administrative Law Judge (ALJ) applied the Social

Security Administration's five-step sequential evaluation process for determining whether an

individual is disabled, *see* 20 C.F.R. § 404.1520, and concluded Paiz was not disabled at any time

before the date last insured, December 31, 2008. Although the ALJ concluded Paiz was not

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Federal
Rule of Civil Procedure 25(d), Saul is substituted for Nancy A. Berryhill as the Defendant in this
case.

disabled, the ALJ did find Paiz had two severe impairments before the date last insured: left plantar fasciitis and bilateral plantar spurs. *See* R. at 25. These impairments were related to Paiz's complaints of heel pain and difficulty standing and walking. The impairments, however, did not meet the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Accordingly, the ALJ then determined Paiz's residual functional capacity (RFC).

For her RFC, the ALJ determined Paiz could perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except Paiz can only lift and/or carry up to twenty pounds occasionally and ten pounds frequently, can sit for up to six hours a day, but can only stand and/or walk for only four hours a day. *See* R. at 28. This limitation requires Paiz to have the freedom to sit and stand at will. *See id.* Also, Paiz can never climb ladders, ropes, or scaffolds, and is limited to no more than frequent climbing of ramps and stairs, stooping, crouching, crawling, balancing, and kneeling. *See id.* Paiz can have no exposure to hazards, including unprotected heights and moving machinery. *See id.* Although Paiz developed additional impairments after the last date insured, the ALJ considered all impairments from 2008 until 2013, and determined the RFC was unchanged since July 25, 2008. *See id.*

Considering Paiz's RFC, the ALJ determined she was unable to perform any past relevant work. After hearing testimony from a vocational expert, the ALJ determined there were jobs that existed in significant numbers in the national economy that Paiz could have performed during her alleged period of disability. *See id.* at 33. As a result, the ALJ determined Paiz was not disabled during the relevant period.[2]

---

[2] The ALJ also determined Paiz *was* disabled as of July 24, 2013, and awarded her benefits for supplemental security income pursuant to 42 U.S.C. § 1382c(a)(3)(A). Paiz does not challenge this portion of the ALJ's decision.

In her request for review before this Court, Paiz argued the ALJ's decision was not supported by substantial evidence because (1) the ALJ rejected medical opinion evidence without reasonable explanation, (2) the ALJ rejected Paiz's testimony without reasonable explanation, (3) the ALJ improperly used the medical-vocational guidelines, (4) the ALJ's RFC determination was logically inconsistent and contradictory, and (5) the ALJ relied on the vocational expert's testimony in response to an improper hypothetical. On March 29, 2018, Judge Caracappa issued the R&R and addressed these alleged errors. She concluded the ALJ's decision was supported by substantial evidence, and recommended this Court affirm the Commissioner's denial of benefits. On April 12, 2018, Paiz filed objections to the R&R, reiterating arguments previously made in her request for review.

**DISCUSSION**

Pursuant to 28 U.S.C. § 636(b)(1), this Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." Upon de novo review of the record, the Court agrees with the reasoning in the R&R and will adopt it. The Court will, however, briefly address Paiz's objections to which she alleges the R&R overlooked or ignored her arguments in her request for review.

Paiz first objects to the R&R's conclusion that the ALJ's decision to give the medical opinions from Dr. Horacio Buschiazzo and Dr. Marc Karpo little weight, was supported by substantial evidence. As for Dr. Buschiazzo, Paiz asserts he was a treating physician and his opinion that she could only walk four to five blocks was entitled to significant weight. Paiz takes issue with the ALJ's decision to give Dr. Buschiazzo's opinion little weight and argues the ALJ's explanation, that Dr. Buschiazzo's opinion was unsupported by the medical record evidence, was insufficient. As for Dr. Karpo, Paiz argues his opinion, although given five years after the relevant

period, was relevant because her RFC remained unchanged since the relevant period. Paiz thus asserts the ALJ's conclusion that his opinion was not relevant was not supported by substantial evidence.

Despite Paiz's argument to the contrary, the ALJ's decision to give Paiz's physicians' opinions little weight was supported by substantial evidence. "[T]he ALJ [must] accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (internal quotation marks and citations omitted). If a treating physician's opinion varies from the opinion of a nontreating, nonexamining physician, the ALJ can choose which physician to give weight, but "cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). The ALJ may reject a treating physician's opinion if it is based on contradictory medical evidence. *See Morales*, 225 F.3d at 317. The ALJ may not reject the treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." *Id.*

In the ALJ's opinion, she discussed Paiz's medical history and records up until she met with Dr. Buschiazzo in July 2008. *See* R. 28–30. The ALJ noted Paiz's medical treatment notes from 2003 show only "a moderate inferior calcaneal spur on her right foot." *Id.* at 29; *id.* at 240–45. Paiz pursued some physical therapy and injection treatments which she stated alleviated her symptoms and pain. *Id.* at 232–34, 238–39; 142–43, 145. During 2003 and 2004, Paiz's physical examination findings were "consistently normal." *Id.* at 29. The ALJ noted Paiz had "no lower extremity swelling, and normal range of motion of all joints in the feet and ankles." *Id.* In 2005, Paiz received treatment because "she had pain in her right forefoot several weeks prior that had since resolved." *Id.*; *id.* at 240. Importantly, Paiz's examination during this time revealed only

"mild" symptoms and there were "no clinical findings of any significance." *Id.* at 240. Later Paiz received an MRI, which revealed only mild abnormality in her foot and there was "*no definite evidence* of plantar fasciitis." *Id.* at 294 (emphasis added). In 2006, imaging of Paiz's foot showed only a minimal deformity and an inferior calcaneal spur. *Id.* at 293.

This medical evidence, which existed before Dr. Buschiazzo met with Paiz in July 2008, conflicts with his limitation of Paiz's ability to walk only four to five blocks. The medical evidence prior to July 2008 is sparse, as the ALJ noted, suggesting Paiz's pain and limitations due to her claimed symptoms were not severe. Each of Paiz's examinations noted only normal findings and moderate or mild symptoms, as did nearly all of Dr. Buschiazzo's report. The ALJ had reason to find Dr. Buschiazzo's only limitation listed in his entire report, which the ALJ believed was based on Paiz's subjective complaints of only being able to walk four to five blocks, less credible considering the prior medical history including Paiz's sparse treatment, the mild and moderate clinical findings, and the lack of a definite plantar fasciitis diagnosis. *See Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) (stating a plaintiff's subjective complaints listed in a medical source is not entitled to any weight).

The Court also agrees with the R&R's assessment of the internal inconsistency with Dr. Buschiazzo's report, in which he noted Paiz's exam was normal and was only diagnosed with "possible" chronic fasciitis of both feet—suggesting he did not find a definitive diagnosis necessary at the time. As a result, the Court finds the ALJ's rejection of Dr. Buschiazzo's standing limitation to be supported by substantial evidence and Paiz's objection will be overruled.

In challenging the ALJ's decision to give Dr. Buschiazzo's opinion little weight, Paiz cites to *Morales v. Apfel*, in which the Third Circuit held an ALJ improperly rejected a treating physician's opinion because it was not supported by contradictory medical evidence and because

"he did not believe [the claimant's] testimony at the hearing." 225 F.3d at 319. This case is inapposite here. There is nothing in the record to suggest the ALJ gave Dr. Buschiazzo's opinion little weight due to her own observations of Paiz at the hearing or Paiz's credibility. Rather, the record shows exactly what the ALJ noted: Dr. Buschiazzo's report stated Paiz's medical examination was largely unremarkable, and his severe limitation of Paiz's ability to walk only four to five blocks was contradictory to his exam. Although Paiz argues Dr. Buschiazzo's had knowledge of Paiz's medical history, including her consistent complaints of foot pain, Paiz's medical condition at the time she saw Dr. Buschiazzo in July 2008, was "mild" and did not support the severe limitation he noted in his report. The ALJ's explanation that Dr. Buschiazzo's report was "not otherwise supported by the medical evidence of record" is sufficient to support the decision to give his opinion little weight. *See Witherspoon v. Saul*, No. 18-4352, 2019 WL 5188564, at *5 (E.D. Pa. Oct. 15, 2019) (finding ALJ's decision to give treating physician's limitations little weight was appropriate "because they were inconsistent with his treatment records").

Turning to Paiz's next objection, the ALJ's decision to give little weight to the opinion of Dr. Karpo, stating Paiz was limited to standing only two hours a day and lifting less than ten pounds occasionally, was also supported by substantial evidence. Paiz's objection on this decision focuses on the ALJ's statement that Dr. Karpo did not treat Paiz until 2013, well after the relevant period and is thus not relevant to Paiz's limitations at that time. Paiz argues the ALJ contradicted herself when she discredited Dr. Karpo's statement from 2015, while also stating Paiz's RFC remained unchanged from July 25, 2008, until July 24, 2013. According to Paiz, an assessment of her conditions in 2015 is thus relevant to her RFC in 2008 because the RFC was the same between the two times.

This alleged inconsistency does not establish the ALJ's decision to give little weight to Dr. Karpo's opinion was not supported by substantial evidence. In fact, although the RFC was unchanged, the ALJ noted Paiz "developed additional impairments between July 25, 2008, . . . and July 24, 2013, . . . [and the ALJ] generously considered all limitations." R. 28. The ALJ thus considered all of Paiz's limitations, even those that arose after the relevant period. The record, however, does not support the finding of additional limitations during the relevant period in 2008, when Dr. Karpo observed them from 2013 to 2015. In fact, one of Dr. Karpo's reports states Paiz's heel pain started only three years before his meeting with her in 2014 which suggests her symptoms at that time differed from those in 2008. Despite consideration of all of Paiz's limitations from 2008 until 2013, the ALJ was reasonable to note that Dr. Karpo did not treat Paiz until nearly five years after the relevant period and to afford his opinion little weight as a result.

Although Paiz focuses on the above inconsistency, the ALJ also noted Dr. Karpo's limitations were not supported by the medical evidence of record which demonstrated only mild findings. On this point, Paiz takes issue with the R&R's characterization of the findings as "mild/moderate," *see* R&R at 32, which misstates the ALJ's decision and, Paiz argues, concedes her condition was more than merely "mild." *See* Objs. at 4. The R&R's characterization of Paiz's condition as "mild/moderate," rather than just "mild," does not warrant remand to the ALJ. First, at least one record supports the statement of Paiz having "moderate" symptoms. *See* R. at 243 (noting x-ray showed a "moderate inferior calcaneal spur"). Second, assuming a moderate condition is more severe than a mild condition, the finding of a moderate heel spur on one x-ray from 2003 does not outweigh the several other objective findings in the record showing Paiz's conditions were mild. *See, e.g.*, R. at 240 ("[T]here are no clinical findings of any significance today."); *id.* at 294 ("mild signal abnormality" and "no definite evidence of plantar fasciitis"); *id.*

at 231 (finding "mild hyperemia" and "mild increased uptake at the posterior right calcaneus"); *id.* at 235 (noting "mild" decreased range of motion and recommending flexibility exercises for treatment); *id.* at 239 ("Examination of heel shows pain medial-plantarly right. Mild.").

Paiz also argues the ALJ's rejection of Dr. Karpo's opinion was based on improper lay medical judgment. The Court disagrees. An ALJ may reject a medical opinion where it contradicts objective reports and findings in the record. *See Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). The medical evidence shows Paiz's condition was mild. For a mild condition, Dr. Karpo's report suggests Paiz's limitations are higher than the relevant medical evidence shows. The ALJ's conclusion that Dr. Karpo's limitation of standing only two hours per day was not representative of the overall mild physical findings throughout Paiz's medical history. *See Witherspoon*, 2019 WL 5188564, at *5–6 (finding ALJ giving little weight to treating physicians' opinions was supported by substantial evidence because their opinions were "inconsistent with the record as a whole"). Dr. Karpo's opinion was contradicted by other evidence in the record suggesting Paiz's medical conditions were mild and that her knee pain only began May 2015. *See* R. at 482. For instance, in 2014, a different doctor stated Paiz had "[v]ery mild intrafascial and peri-aponeurotic edema consistent with mild proximal plantar fasciitis." R. at 512. He also noted the plantar heel spur was small and had normal marrow signal. *See id.* The other findings were all normal. *See id.* Therefore, the Court finds the ALJ's decision to give Dr. Karpo's opinion little weight is supported by substantial evidence and Paiz's objection will be overruled.[3]

---

[3] Even giving Dr. Karpo's opinion more weight, upon de novo review of the record, the ALJ's RFC determination was supported by substantial evidence. The ALJ found Paiz's mild conditions severely impair her and place limitations on her ability to stand and walk. Due to Paiz's impairments, although mild relative to her condition, the ALJ discredited the state agency physical consultants who stated Paiz could stand for six hours per day. The record shows Paiz did not seek treatment for long periods of time, including the relevant time period. The ALJ noted Paiz reported foot pain for only the past three to four months when she sought treatment in 2013—which

Paiz next objects to the R&R's conclusion that the ALJ correctly applied the medical-vocational guidelines by relying on vocational expert testimony. Paiz asserts the ALJ failed to follow Social Security Ruling 83-12 which addresses the situation when an RFC is between two rules directing opposite conclusions regarding an applicant's disability. SSR 83-12 states, in pertinent part, if

> the individual's limitations are somewhere in the middle in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [vocational expert] assistance is advisable for these types of cases.

The ALJ's reliance on the vocational expert's testimony complies with the requirements of SSR 83-12. According to Paiz's RFC, she did not have the full exertional capacity to perform the full range of light work. Paiz's RFC, however, also provides that she had more than the full exertional capacity to perform only sedentary work. Paiz's limitations thus placed her in the middle of light work and sedentary work RFCs. Pursuant to SSR 83-12, vocational expert assistance is advisable. The ALJ relied on a vocational expert to determine whether there were jobs existing in the national economy that Paiz could have performed given her RFC between light and sedentary levels. The ALJ's reliance on the vocational expert's testimony therefore complies with the requirements of SSR 83-12, despite Paiz's argument to the contrary.

---

suggests her past symptoms from 2005–2008 had improved and did not impair her as much. R. at 369. Further, some medical records noted Paiz walked with an "antalgic gait," while other records stated she walked with "a steady, reciprocal gait, with good cadence and step lengths." R. at 500 (antalgic gait to left foot); *id.* at 568 (antalgic gait to right foot); *id.* at 464 (steady gait). Importantly, during the relevant time period in 2008, Paiz was observed to "have a normal unassisted gait." R. at 29; *id.* at 306. The ALJ's determination that Paiz could stand and/or walk for four hours a day during the relevant time period was supported by the medical evidence, even considering Dr. Karpo's limitation of two hours, the state agency physical consultants' limitation of six hours, and the unchanged RFC which generously considered limitations which arose after the relevant time period.

Although Paiz argues the ALJ had other obligations under SSR 83-12, *see* Pl.'s Br. 12–13, she points to no other ruling or language suggesting the ALJ's reliance on the vocational expert was improper. The vocational expert testified to the available occupational base for Paiz's limitations and her exertional levels. The testimony allowed the ALJ to conclude there were jobs available in significant numbers in the national economy Paiz could perform in light of her RFC. Therefore, Paiz's argument that the ALJ "had no basis" to conclude jobs between light and sedentary work existed is unpersuasive. The Court will overrule this objection.

Next, Paiz asserts the ALJ's RFC assessment was "logically inconsistent and contradictory." *See* Objs. 6–7. Paiz argues the RFC is inconsistent because it states she can lift and/or carry up to ten pounds frequently (which is between two hours and five hours of the day), but she can only stand and/or walk for up to four hours in a day. Paiz states carrying necessarily requires walking and if she is expected to be able to carry for roughly five hours a day, she cannot do so when she is limited to standing and/or walking up to four hours a day.

Despite Paiz's strained interpretation of these limitations, the Court does not find they are logically inconsistent such that it warrants remand. Lifting and/or carrying up to ten pounds "frequently" includes doing so between one-third and two-thirds of the day, i.e. between approximately two and five hours per eight-hour workday. *See* SSR 83-10. It is entirely possible for Paiz to lift and/or carry items for one-third of the day—meaning she does so frequently—and remain within her four-hour stand and/or walk limitation. Although frequent lifting and/or carrying is "up to" two-thirds of the day, there is no requirement that a person who can frequently lift and/or carry must always do so. Frequent lifting and/or carrying also encompasses doing so one-half of the day, which is within the same limitation as Paiz's ability to stand and/or walk.

To the extent Paiz takes issue with the ALJ's use of "and/or" in the RFC, it does not create an ambiguity warranting remand. The RFC unambiguously states Paiz can lift and/or carry up to ten pounds frequently. This means she can lift ten pounds frequently or she can carry ten pounds frequently. Paiz is also capable of both lifting and carrying frequently. Arguably, Paiz can lift for one-quarter of the day, and she can carry for one-quarter of the day. This is well within the RFC's limitation to frequent lifting and/or carrying and comports with Paiz's four-hour limitation to standing and/or walking. *Cf. Johnson v. Comm'r of Soc. Sec.*, 263 F. App'x 199, 203 (3d Cir. 2008) (stating ALJ's determination that claimant could lift and carry ten pounds frequently with a two-hour stand and/or walk limitation was supported by substantial evidence). The Court applies this same rationale to the standing and/or walking limitation. In sum, the Court will overrule Paiz's fourth objection because the RFC is not internally inconsistent and is supported by substantial evidence.

Turning to Paiz's final objection, she objects to the hypothetical the ALJ asked the vocational expert because the limitation of "sit/stand at will" lacks specificity. Upon de novo review of the record, and because the Court agrees with Judge Caracappa's reasoning on this point in the R&R, the Court will overrule Paiz's objection for the reasons stated in the R&R. The Court also notes the Third Circuit has upheld hypotheticals with an identical sit/stand at will limitation. *See, e.g.*, *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 206 (3d Cir. 2008) (stating "nothing about the hypothetical requires reversal," including an at-will sit/stand option); *Giese v. Comm'r of Soc. Sec.*, 251 F. App'x 799, 804 (3d Cir. 2007) (holding hypothetical posed was correctly characterized when it included plaintiff's ability to sit or stand at will). Therefore, Paiz's argument that the ALJ's hypothetical lacked specificity fails.

**CONCLUSION**

For the reasons stated above, the Court will overrule Paiz's objections, adopt the R&R, and

deny Paiz's request for review. The Court will also enter judgment in favor of the Commissioner.

An appropriate order follows.

BY THE COURT:


 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.